# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| JEROME LEE, | * |
| Petitioner | * |
| v. | *     Case No. GJH-16-2677 |
| STATE OF MARYLAND, | * |
| Respondent | * |

***

## MEMORANDUM OPINION

Petitioner Jerome Lee challenges the legality of his Maryland State conviction on charges of theft under one-thousand dollars, kidnapping, and false imprisonment pursuant to 28 U.S.C. §2254. ECF No. 1. Respondent seeks dismissal of the petition without a hearing on the basis that the petition does not raise a cognizable claim warranting federal habeas relief. ECF 9. The Court finds no need for a hearing in this matter. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2016); *see also Fisher v. Petitioner*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)). For the reasons stated below, the Court denies the petition and declines to issue a certificate of appealability.

### I. BACKGROUND

#### A. Petitioner's Trial

Petitioner and his co-defendant Jamal Richards were indicted on charges of first degree rape, multiple sex offense charges, assault, robbery, theft under one-thousand dollars, false imprisonment, and kidnapping. The two received separate trials. Petitioner was acquitted on charges of rape, sex offense, assault and robbery, but was found guilty by a jury of the theft, false

imprisonment and kidnapping counts. Richards was convicted of first-degree rape, three counts of first-degree sex offense, robbery, kidnapping, and false imprisonment; he was sentenced to an aggregate sentence of 55 years. *See* ECF No. 9 at 7, n. 2.[1] The evidence and testimony presented at trial are outlined below.

The victim in this case, Barbara Lessio, is a resident of Italy and was temporarily residing in Towson, Maryland, working as an au pair. On the evening of May 21, 2010, she went to a bar in Baltimore, Maryland with three other friends including Elizabeth Dillard, who testified at trial. ECF No. 9-2 at 180-88 (direct testimony). Ms. Dillard explained that she and Lessio left a bar called "Gin Mill" at approximately 2 a.m. the following morning, after last call at the bar. *Id*. at 183. Dillard testified that she and Lessio took a cab back to Dillard's apartment in downtown Baltimore. *Id*. Dillard explained that once they arrived at her apartment building, Lessio indicated that she wanted to go back to her home in Towson, so Dillard left Lessio in the cab, went to her apartment, and promptly fell asleep. *Id*. at 190-2 (cross-examination). When Dillard awoke the next morning, she noticed numerous missed calls from Lessio on her cellphone. *Id*. at 193 (redirect).

Lessio testified that after Dillard got out of the cab, she learned that the cab fare back to Towson would be fifty dollars or more. ECF No. 9-3 at 16. Lessio then exited the cab and unsuccessfully searched for Dillard and tried to contact both Dillard and another friend on the phone. *Id*. at 17. She explained that she saw a car parked on the street, walked over to it, and began talking to the two men inside: Richards and Petitioner. *Id*. at 17-18. Lessio recalled that Richards was in the driver's seat, and Petitioner was in the front passenger seat. *Id*. at 18. She asked the two men if they would be willing to give her a ride home, and they agreed. *Id*. Although Lessio gave

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

them an address to put into the GPS on a cellphone, they claimed the GPS did not work; by this time, Lessio was in the backseat of the car. *Id*. at 19.

Lessio testified that she was in the car a short while before Petitioner climbed into the backseat with her and began touching her thighs inappropriately and would not stop despite her requests. *Id*. at 20-21. She testified that Petitioner then pushed her down on the seat and vaginally raped her twice, then forced her to perform fellatio. *Id*. at 22-24. Lessio recalled that each time she attempted to raise her head and pull away, Petitioner slapped her in the face and on the head and kept his hands on her head. *Id*. at 25.

Lessio testified that Richards stopped the car near a park after Petitioner had finished. *Id*. at 25-26. Lessio testified that she, Richards, and Petitioner got out of the car and the two men led her down the hill at the park where Petitioner again forced her to perform oral sex while Richards raped her vaginally and anally. *Id*. at 26-27. Lessio recalled that one of the two men went through her purse, removing her camera, phone, wallet with credit cards, cash and debit card. *Id*. at 28-29. As they approached the road, Lessio saw a van driving down the street and ran towards it, trying to stop it so she could get assistance. *Id*. at 29-30. But the van only slowed down, and Lessio testified that Richards and Petitioner grabbed her and drug her back to the car. *Id*.

Richards again took the driver's seat and drove the car to a gas station, where he used Lessio's debit card to put gas in the car. *Id*. at 31. Lessio testified that she did not give either man permission to use her debit card. *Id*. Lessio stated that she first gave the men the wrong PIN number. *Id*. at 32. After they discovered the PIN would not work, Lessio stated that Petitioner told her that if she wanted "to see the sun tomorrow," she would need to provide them with the correct number. *Id*. at 33. Lessio complied and Petitioner exited the car to use the debit card while Richards stayed in the car. *Id*. at 34. She testified that her debit card was used at least twice that evening. *Id*.

3

Lessio stated that after he used the debit card, Petitioner got into the backseat with her and again forced her to perform fellatio. *Id*. at 35. Richards then moved to the back seat and forced Lessio to perform fellatio. *Id*. Lessio said that Petitioner was not wearing a condom during any of the times he forced her to perform oral sex. *Id*.

Richards and Petitioner were both in the front seat when Richards drove the car to another area that was also unknown to Lessio and let her out of the car. *Id*. at 37. Lessio did not have her cellphone and testified that she asked Petitioner to give her camera back to her as it had been a birthday gift, but he refused. *Id*. at pp. 37-38. Lessio recalled walking to a car stopped at a red light and asking the man driving to call for help. *Id*. at p. 38.

A Baltimore City Police Officer responded to a call made by the man Lessio had encountered at the stoplight and took Lessio to a police station and then to a hospital. *Id*. at 38-39, *see also* ECF No. 9-5 at 38-39 (cross-examination of Officer Roberto Cornejo). Lessio was examined at the hospital, where she met with Detective Mundy of the Baltimore City Police. ECF No. 9-3 at 40-41. Approximately one week later, Lessio found the ATM receipts in her purse which she provided to Detective Kerry Snead who had been assigned as the primary investigating officer in the case. *Id*. at 43. Lessio positively identified both Richards and Petitioner in two separate photographic arrays provided to her by Detective Snead. *Id*. at 45-48.

Additional testimony from witnesses for the State established that Lessio's examination at Mercy Medical Center revealed lacerations on her labia, lacerations to the top of her anus, and bruising to the top of her thigh down toward the middle of her thigh and to her ankle. ECF No. 9-3 at 116-119 (direct testimony of Nira Mitchell, NP). Evidence collected during Lessio's exam included vaginal cultures, photographs of the bruising to her legs, and collection of her underwear and tights for testing. *Id*. at 113, 120. Additionally, oral swabs were taken from Richards and

4

Petitioner, and swabs were taken from the backseat driver's side and the middle of the backseat of the 2009 Grand Marquis Richards was driving. *Id*. at 141-45. Because the presence of sperm was detected on the waistband of the tights Lessio was wearing, it was sent for DNA testing along with the swabs from the car. *Id*. at 144, 146.

The DNA analysis of the physical evidence collected revealed that the stain from Lessio's tights matched the DNA sample provided by Petitioner. ECF No. 9-4 at 9-27. Through latent print analysis of the ATM receipts, and comparison with known fingerprints from Richards and Petitioner, it was established that both Richards' and Petitioner's fingerprints were on the receipts. *Id*. at 36-46. A Bank of America employee authenticated records of the multiple ATM transactions. ECF No. 9-5 at 6-19.

Police recovered Lessio's camera at a pawn shop during their investigation. The owner of the pawn shop testified that the camera was pawned by Petitioner. ECF No. 9-4 at 61-69. Petitioner testified at trial and provided a much different description of his interaction with Lessio. ECF No. 9-5 at 42-68 (direct testimony). Petitioner stated that when Lessio got into the car, he was in the front passenger seat of the car, wearing sunglasses, and sleeping with the seat reclined because he had a headache. *Id*. at 49. He testified that he spoke to Lessio from the front seat and did not move to the backseat until he asked her if it was okay to do so and she confirmed it was okay. *Id*. at 52. He also testified that Lessio had an accent but that he did not have any trouble understanding what she was saying, and that after talking for five to ten minutes, Petitioner asked Lessio for oral sex. *Id*. at 54-55. According to Petitioner, Lessio agreed to perform oral sex but asked him to wear a condom, which she provided. *Id*. Petitioner testified that after he had ejaculated, Lessio threw the condom out of the window of the car. *Id*. at 56. Petitioner then testified that he gave her 25 dollars,

which she used to pay Richards to drive her wherever she wanted to go. *Id*. at 57. Petitioner recalled that he then returned to the front seat where he went back to sleep. *Id*.

Petitioner claims that when he awoke, the car was parked one block behind the Alameda Shopping Center in East Baltimore at Belvedere and Loch Raven and he was the only one in the car. *Id*. at 58. He saw that the keys were still in the ignition, sat in the car for a few minutes, lit a cigarette, and got out of the car. *Id*. at 59. Petitioner recalled that he saw Richards and Lessio walking out of an apartment complex, but stated that he knew nothing else about where they had gone or what they had done. *Id*. He claimed that Richards and Lessio walked to the car and both got into the car voluntarily. *Id*. at 60.

Petitioner also testified that Lessio provided her ATM card to Richards voluntarily so that he could put gas in the car. *Id*. Petitioner explained that he believed the subsequent ATM transactions using Lessio's debit card were made pursuant to an agreement between Richards and Lessio. *Id*. at 62. He also stated that he got no money from any of the transactions and that his fingerprints were only on the ATM receipts because Richards had handed him a pack of cigarettes with the receipts on top of the cigarette pack. *Id*. at 63. Petitioner also testified that he did not steal Lessio's camera, but that she had left it in the car; he later pawned it because he did not want to be in possession of the camera, as he was unaware of what had occurred between Lessio and Richards. *Id*. at 63-65. Petitioner stated that they left Lessio at the intersection of Loch Raven and Cold Spring because she had asked to get out of the car there. *Id*. at 65.

The jury found Petitioner not guilty on all charges related to the sexual assault on Lessio, as well as the robbery and assault charges, but found Petitioner guilty of theft under one thousand dollars, kidnapping, and false imprisonment. ECF No. 9-7 at 10-14. At the sentencing proceeding, counsel for the State and the defense engaged in lengthy argument regarding whether the false

6

imprisonment count should merge with the kidnapping count and what effect, if any, non-merger would have on sentencing. ECF No. 9-8 at 5-19 (State's argument); *id.* at 20-30 (Defense argument). The trial court resolved the issue in favor of the State, holding that the false imprisonment count related to the initial period of time Lessio was in the car and was not allowed to leave. *Id*. at 38. The kidnapping charge, on the other hand, related to the period of time when she managed to run away from the two men in the park, and Petitioner and Richards had forcibly put her back into the car. *Id*. at p. 38. The trial court then expressed its belief that "Mr. Lee's involvement in this case made it possible for the horrific sexual offenses to occur for which the co-defendant was found guilty" and that he had "altered the nature of the interaction and transformed it into a sexual interaction or nightmare." *Id*. Based on the court's view that "the circumstances accompanying this crime are of such unusual aggravation the punishment ought to be unusually severe," Petitioner was sentenced to an aggregate term of 85 years. *Id*. at 39.

B. Direct Appeal

On appeal to the Maryland Court of Special Appeals, Petitioner presented the following questions for the appellate court's review:

> Should the offenses of false imprisonment and kidnapping merge pursuant to the required evidence test, thereby capping Appellant's sentence to thirty years for the greater offense?
>
> Did the trial court consider impermissible sentencing criteria when it determined [Petitioner's] sentence?
>
> Did the sentences imposed by the trial court constitute cruel and unusual punishment?

ECF No. 9-12 at 2 (Court of Special Appeals unpublished opinion).

The appellate court found no error in the trial court proceedings and affirmed Petitioner's convictions and sentence.[2] Petitioner filed a petition for writ of certiorari with the Maryland Court of Appeals that was denied without opinion. ECF No. 9-13.

C. Post-Conviction

On April 8, 2014, Petitioner filed a post-conviction petition in the Circuit Court for Baltimore City and raised claims of ineffective assistance of trial counsel based on his view that: counsel failed to effectively litigate the issue of whether false imprisonment and kidnapping merged; failed to properly litigate issue of whether the offenses were based on specific separate acts; failed to move for a mistrial because the same judge presided over co-defendant's trial; failed to effectively assert that it was improper for the sentencing judge to consider the outcome of the co-defendant's trial at sentencing; failed to preserve for appellate review the issue of whether the trial court considered impermissible sentencing criteria; failed to effectively assert that if the kidnapping and false imprisonment counts did not merge the sentence imposed by the trial court was so grossly disproportionate to the sentencing guidelines that it constituted cruel and unusual punishment in violation of the U.S. Constitution and Article 25 of the Maryland Declaration of Rights; failed to notify Petitioner of a plea offer he might have accepted; failed to effectively assert that it was improper for the trial court to consider co-defendant's rape and sexual offense convictions when imposing sentence; and failed to object to the trial court's comments, questions, and considerations at sentencing thereby failing to preserve the issue for appellate review. ECF No. 9-17 at 1-2 (Post-conviction court's Statement of Reasons and Order). On June 22, 2015, post-conviction relief was denied by the Circuit Court following a hearing on June 18, 2015. *Id.* at 3.

---

[2] The content of the appellate court's decision, as well as the post-conviction court's decision, are discussed in more detail *infra*.

Petitioner's July 21, 2015 application for leave to appeal the order denying post-conviction relief was denied on June 21, 2016. ECF 9-1 at 13.

Here, by his Petition filed pursuant to 28 U.S.C. §2254, Petitioner claims that his trial attorney was ineffective because counsel failed to litigate the issue of whether false imprisonment and kidnapping would merge as a matter of law, and did not argue that the *Blockburger*[3] evidence test was the proper standard to apply to this case. ECF No. 1 at 5. Petitioner also asserts that the trial court considered impermissible criteria when imposing his sentence; erred when the trial judge was the same judge presiding over Richards' trial which produced a decidedly different outcome; and trial counsel should have moved for a mistrial based on the trial judge presiding over Richards' trial. *Id.* at p. 7. Petitioner did not file a memorandum in support of his claims, nor did he file a reply despite being provided the opportunity to do so. *See* ECF No. 2 at ¶ 3 (Show Cause Order).

II. **STANDARD OF REVIEW**

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings" *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S. 415, 419-20 (2014) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well

---

[3] Though the petition references the "*Blockbuster*" evidence test, given the context and the issues presented by Petitioner's petition, the Court assumes this is a reference to the Supreme Court's decision in *Blockburger v. U.S.*, 284 U.S. 299 (1932).

understood and comprehended in existing law beyond any possibility for fair minded disagreement.") (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under § 2254(d)(1)'s "unreasonable application" analysis, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant

state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

### III. DISCUSSION

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The second prong requires the Court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A strong presumption of adequacy attaches to counsel's conduct, and a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id*. at 696.

As the Supreme Court held in *Strickland*, "a state court conclusion that counsel rendered effective assistance of counsel is not a finding of fact binding on the federal court to the extent stated by [former] 28 U.S.C. § 2254(d)[ now § 2254(e)(1)]." *Id*. at 698. Rather, "although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the

11

deference requirement of § 2254[(e)(1)], . . . both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.* It follows, then, that § 2254(d)(1) applies to the state court's conclusion that the petitioner's trial counsel rendered effective assistance of counsel and this Court may not grant relief on this claim as long as the state court denied the claim based on a reasonable application of the *Strickland* standard to the facts presented in the state court proceeding.

Petitioner claimed that his trial counsel did not effectively advocate for merger of the false imprisonment conviction and the kidnapping conviction. The post-conviction court rejected this claim, observing that trial counsel had zealously advocated for merger of these convictions. ECF No. 9-17 at 8-10. The post-conviction court quoted at length counsel's argument to the trial court. *Id*. at 10. Indeed, counsel argued extensively:

> Your Honor, relative to the issue of merger there is no doubt that the crimes of false imprisonment and kidnapping merge. If we take the required elements test and we look at what the elements are of each crime. The crime of kidnapping calls for the defendant to have confined or detained the victim. Calls for the defendant to move the victim from one place to another and what I think is kind of repetitive, the third element that the defendant both confine and move the victim against her will. That the defendant used force, threat of force, deception to accomplish that confinement and detention and that the defendant be moved without with the intent -- that the defendant move the victim with the intent to carry or conceal.
>
> False imprisonment defendant confined or detained the victim, an element of kidnapping. False imprisonment, the victim was confined or detained against her will, an element of kidnapping. False imprisonment that the confinement or detention was accomplished by force, threat of force or deception, an element of kidnapping. The two offenses merge. There is no question. They have the same elements except the kidnapping has more elements than false imprisonment. It is a lesser included offense.
>
> What the State is trying to do is say that we have no doubt a lesser included offense but during the course of this alleged two hour situation where Ms. Lessio started out voluntarily getting into a car and a situation involved where she was confined and acts were committed, that this somehow can bisect or dissect itself into two separate offenses and it's impossible.

12

> I mean it would be as if there were a robbery where where (sic) the robber goes up to the victim and hits the victim over the head and then bends down and picks up wallet. And we say well there is an assault, we're going to sentence you for the assault and the wallet had a thousand dollars in it so we're going to sentence you for the maximum -- for the fifteen years for a theft and we're going to sentence you for the ten years for the assault and we're going to give you 25 years. We're going to give you more than we could. We're going to sentence you for two separate crimes.
>
> It's like larceny. I mean, kidnapping like larceny is a continuing offense. I mean by its very nature it is a continuing offense, that being that the defendant moved the victim with the intent to carry or conceal. So the State is trying to say that this kidnapping began or the false imprisonment began at some point then stopped and turned into the other crime.
>
> But Ms. Lessio was put in the car. She testified that when Mr. Lee hopped over the back seat and began touching her in an untoward feeling that she asked him to stop, that then a sexual- offense occurred. She was confined to that car. I mean, she was confined against her will. Somebody according to her allegedly was holding her down. The car was moving. She was being confined against her will. All of the elements, she was being detained. She was being moved from one place to another. She was being confined and with the intent of the defendants at that point to do that and the State is trying to say well, that's one offense and then the car stops and she gets out and then she's forced back into the car that is another offense.
>
> But. it's one continuing offense. There is -- I don't see how we can bisect them. There's no question that they merge. The State is not happy that they merge so the State is trying to bisect them. You can bisect virtually any crime that you want that has more than one element and if there's any time difference then you can say well we can sentence you for two or three different crimes.

ECF No. 9-8 at 20-23.

That the trial court ruled in favor of the State despite counsel's efforts to persuade the court otherwise does not render counsel's performance ineffective for purposes of a Sixth Amendment claim. The post-conviction court's rejection of this claim was without error and does not present a valid claim for federal habeas relief.

Petitioner's assertion that trial counsel should have argued the *Blockburger* standard is without merit. In *Blockburger*, the Supreme Court held that, "where the same act or transaction

constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304. *Blockburger* thus applies where a *single* act violates more than one statute. Here, the state courts determined that there were two distinct offenses which were indicted separately.

The Maryland Court of Special Appeals addressed this merger claim in its opinion rejecting the claimed error. The appellate court observed in pertinent part that:

> "'The doctrine of merger of offenses is premised in part on the Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution.'" *Jones-Harris v State*, 179 Md. App. 72, 98 (2008) (quoting *Abeokuto v. State*, 391 Md. 289, 352-53 (2006)). The Double Jeopardy Clause guarantees "constitutional protection against (l) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; (3) and multiple punishment for the same offense." *Parks v. State*, 287 Md. 11, 74-15 (1980) (citation omitted)
>
> The required evidence test is generally the appropriate test for determining whether the different offenses at issue merge and are treated as one offense for Double Jeopardy purposes. *Dixon v. State*, 364 Md. 209, 236 (2001) (citations omitted). *See also Sifrit v. State*, 383 Md. ll6, 137 (2004); *Holbrook v. State*, 364 Md. 354, 369-70 (2001); *Veney v. State*, 227 Md. 608, 613-14 (1962). Under the required evidence test, "'if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter.'" *McGrath v. State*, 356 Md. 20, 23 (1999) (quoting *Snowden v. State*, 32l Md. 672, 617 (1991))
>
> If the Court determines that a merger is required, "separate sentences are normally precluded. Instead a sentence may be imposed only for the offense having the additional element or elements." *McGrath*, 356 Md. at 24 (citation omitted); *see also Miles v. State*, 349 Md. 215, 220 (1998).
>
> *****
>
> Where each of the offenses, even though stemming from one episode, are separately committed as the result of distinct acts or violations, separate convictions and sentences are appropriate. *State v. Boozer*, 304 Md. 98, 105 (1985). "The courts of this country have had little difficulty in concluding that separate acts resulting in separate insults to the person of the victim may be separately charged and punished even though they occur in close proximity to

> each other and even though they are part of a single criminal episode or transaction." *Id., see generally State v. Stouffer*, 352 Md. 97 (1998) (discussing when asportation for purpose of carrying out a crime will support a separate conviction for kidnapping). Further, in *Graham v. State*, 117 Md. App. 280, 290 (1997), this Court determined that, because the jury found that there were "two separate assaults, based on the evidence and instructions, such that there were two separate insults to the person of the victim," the trial court properly sentenced appellant separately for two counts of assault.
>
> The record and testimony from Lessio and Jenkins clearly demonstrates two distinct acts. We agree with the State that the period when Lessio entered the car and Jenkins came into the backseat with Lessio constituted the false imprisonment. Serially, the kidnapping occurred after Lessio left the car and attempted to stop the van by the park when Jenkins and Richards "brought [her] back to the car" and carried her away to be assaulted and robbed. These two events established two distinct acts and insults against Lessio. For these reasons, we conclude that the crimes of false imprisonment and kidnapping are separate and distinct crimes and accordingly merger was not required in this case.

ECF No. 9-12 at pp. 7, 10-11. The finding of fact that the false imprisonment and kidnapping convictions pertained to separate and distinct acts is entitled to this Court's deference. *See* 28 U.S.C. §2244(d)(2), *see also Wood v. Allen,* 558 U.S. 290, 301 (2010) (federal habeas court may not find state court's finding of fact unreasonable even if reasonable minds may differ on result).

Petitioner also claims that it was error for the same judge to preside over both his trial and his co-defendant's trial. This claim was not raised on direct appeal, but was raised in his post-conviction petition in the context of an ineffective assistance of counsel claim. Petitioner also states an ineffective assistance of counsel claim in this Court regarding this issue, asserting that counsel erred when he did not move for a mistrial. The post-conviction court explained that "[t]he Court of Appeals has noted that information acquired by a judge during a prior judicial proceeding involving a co-defendant does not require disqualification in a defendant's trial due to potential prejudice." ECF No. 9-17 at 11 (citing *Boyd v. State*, 321 Md. 69, 76 (1990)). Further, the post-conviction court noted that Petitioner had failed to "set forth any evidence that the trial judge

15

acquired specific information in the co-defendant's case that would prevent the trial judge from being fair and impartial." *Id*.

Failure of trial counsel to make a motion that has no basis in fact or law does not constitute a viable basis for an ineffective assistance of counsel claim. Under *Strickland* there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. The failure to make a frivolous motion or to make ethically improper arguments does not establish that there was an unprofessional error, nor is there a possibility that the result of the trial would have been different had the motion been made. *See Horne v. Peyton*, 356 F.2d 631, 633 (4th Cir. 1966) (fact that counsel could have done more is insufficient for reversal absent any showing of harmful consequences). The claim that having the same trial judge preside over both Petitioner and Richards' trials was error does not present a basis for federal habeas relief.

Petitioner also assigns error to the trial court because, in his view, the judge considered the outcome in Richards' case when Petitioner was being sentenced. ECF No. 1. Petitioner raised this claim on direct appeal. The Court of Special Appeals first noted that there was no objection raised at the sentencing proceeding regarding the court's comments and therefore Petitioner's claim was not properly preserved. ECF No. 9-17 at 12 (citing *Ellis v. State*, 185 Md. App. 522, 550 (2009)). However, the appellate court noted that even had the claim been preserved, "the result would be unchanged." *Id*. at 13. The court explained that:

> "'[A] defendant's sentence should be individualized to fit the offender and not merely the crime. Consequently, [a] defendant's sentence should be premised upon both the facts and circumstances of the crime itself and the background of the individual convicted of committing the crime.'" *Ellis*, 185 Md. App. at 552 (quoting *Jennings v State*, 339 Md. 675, 683 (1995)). *See also State v. Dopkowski*, 325 Md. 671, 679 (1992). A trial judge may base his or her sentence on "perceptions . . . derived from the evidence presented at the trial, the demeanor and veracity of the defendant gleaned from his various court

16

> appearances, as well as the data acquired from such other sources as the presentence investigation or any personal knowledge the judge may have gained from living in the same community as the offender." *Jennings*, 339 Md. at 684-85 (citation omitted).
>
> "[A] sentencing judge in a criminal proceeding is 'vested with virtual boundless discretion.'" *Dopkowski*, 325 Md. at 679 (quoting *Logan v. State*, 289 Md. 460,480 (1981)). A judge "is accorded this broad latitude to best accomplish the objectives of sentencing-punishment, deterrence and rehabilitation." *Id*. (citing *Johnson v. State*, 274 Md. 536, 540 (1975)). Appellate review of a criminal sentence in Maryland is "extremely limited." *Teasley v. State*, 298 Md. 364, 370 (1984) (citations omitted).
>
> There is nothing in the record to indicate that the sentencing judge impermissibly took into account the convictions of Richards. Rather, the sentence relates to [Petitioner's] involvement in the crime. During sentencing the judge said, "the Court does believe that [Petitioner's] involvement in this case made it possible for the horrific sexual offenses to occur for which the co-defendant was found guilty. So in essence I believe that he altered the nature of the interaction and transformed it into a sexual interaction or nightmare." The trial court believed "that the circumstances accompanying this crime are of such unusual aggravation that the punishment ought to be unusually severe."
>
> We agree. There is nothing to suggest that the sentencing judge's considerations were impermissible or constituted an abuse of discretion as sentencing judges are given very broad discretion.

ECF No. 9-12 at pp. 14-15. There is nothing in the Court of Special Appeals' decision that suggests it misapplied established federal law in rejecting this claim. Thus, the claim presented to this Court does not state a claim for federal habeas relief.

Lastly, Petitioner asserts his sentence constitutes cruel and unusual punishment under the Eighth Amendment. ECF No. 1. The Court of Special Appeals, in rejecting this claim, first noted that:

> Under the Eighth Amendment of the United States Constitution, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." "The Eighth Amendment encompasses a narrow proportionality principle prohibiting 'grossly disproportionate' sentences." *State v. Stewart*, 368 Md. 26, 31 (2002) (quoting *Hamelin v. Michigan*, 501 U.S. 957, 997 (1991) (Kennedy, J., concurring)). However, "[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather it

> forbids only extreme sanctions that are grossly disproportionate to the crime."
> *Ewing v. California*, 538 U.S. 11, 23 (2003).

ECF No. 9-12 at 15. The court noted that the trial judge not only has virtually boundless discretion in imposing a sentence due to his unique position of being informed of the particular circumstances of the case and the ability to evaluate individuals before the court, but in this instance was correct in its observation that Petitioner "made it possible for the horrific sexual offenses to occur." *Id*. at 17-18. The court then concluded that "[g]iven the cruel and degrading nature of the crime and [Petitioner's] involvement, the sentence does not appear to be 'truly egregious.'" *Id*. at 18.

Nothing in the appellate court's decision indicates that its conclusion was an unreasonable application of well-established law. Petitioner has failed to present a viable Eighth Amendment claim regarding his sentence. Federal habeas relief will be denied on this claim.

## IV. CONCLUSION

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U. S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S.Ct. 759, 773 (2017). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U. S.C.§ 2253(c)(2). Petitioner may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Petitioner*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate Order denying and dismissing the Petition and declining to issue a certificate of appealability follows.

February 21, 2019                          \_\_\_\_/s/_____
Date                                                       GEORGE J. HAZEL
                                                            UNITED STATES DISTRICT JUDGE